1   CHRISTOPHER M. YOUNG (Bar No. 163319)
    christopher.young@us.dlapiper.com
2   ISABELLA M. NEAL (Bar No. 328323)
    isabella.neal@us.dlapiper.com
3   DLA PIPER LLP (US)
    401 B Street, Suite 1700
4   San Diego, CA  92101-4297
    Tel:    619.699.2700
5   Fax:    619.699.2701

6   SEAN A. NEWLAND (Bar No. 300928)
    sean.newland@us.dlapiper.com
7   DLA PIPER LLP (US)
    400 Capitol Mall, Suite 2400
8   Sacramento, CA  95814-4428
    Tel:    916.930.3200
9   Fax:    916.930.3201

10  Attorneys for Defendant
    GOLI NUTRITION INC.
11

12                    **UNITED STATES DISTRICT COURT**

13                    **EASTERN DISTRICT OF CALIFORNIA**

14

15  JEREMY BORGIA, JULIET OSMER, and          Case No.  2:20-CV-00981-KJM-DB
    ABRAHAM LIBMAN, individually and on
16  behalf of all others similarly situated,  **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES OF DEFENDANT**
17                    Plaintiffs,             **GOLI NUTRITION INC. IN SUPPORT**
                                              **OF MOTION TO DISMISS FIRST**
18        v.                                  **AMENDED COMPLAINT _____**

19  GOLI NUTRITION INC., A Delaware            Judge:    Kimberly J. Mueller
    Corporation,                               Date:     December 11, 2020
20                    Defendant.               Time:     10:00 a.m.
                                               Dept:     Courtroom 3, 15th Floor
21
                                               Complaint Filed:  May 14, 2020
22                                             First Amended Complaint Filed: September
                                               25, 2020
23

24

25

26

27

28

---

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION ................................................................................................ 7

II.    BACKGROUND ................................................................................................ 8

III.   LEGAL STANDARD ...................................................................................... 10

     a.    Rule 12(b)(6) ................................................................................ 10

     b.    Rule 9(b) ....................................................................................... 10

IV.   PLAINTIFFS' CLAIMS BASED UPON THE 2=1 STATEMENT ARE
     PREEMPTED BY THE FDCA ........................................................................ 10

V.    THE BENEFITS STATEMENT CONSTITUTES PUFFERY AND IS NOT
     ACTIONABLE ................................................................................................ 12

VI.   PLAINTIFFS' COMPLAINT DOES NOT SATISFY RULE 9(B)'S
     HEIGHTENED PLEADING STANDARD ..................................................... 13

VII.  PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED A MISLABELLING CLAIM
     UNDER THE UCL, FAL, AND CLRA ......................................................... 15

A.    THE PRODUCT DOES NOT VIOLATE LABELING REGULATIONS ..................... 15

     b.    Plaintiffs Do Not Plead Actual Reliance On The Product's Acetic Acid
           Content ......................................................................................... 16

VIII. A "REASONABLE CONSUMER" WOULD NOT BE DECEIVED BY THE
     "TWO EQUALS ONE" STATEMENT ON THE LABEL AND, IN ANY EVENT,
     COULD CLARIFY ITS MEANING BY SIMPLY REVIEWING THE
     SUPPLEMENT FACTS ................................................................................... 17

IX.   PLAINTIFFS' CLAIMS UNDER THE FLORIDA DECEPTIVE AND UNFAIR
     TRADE PRACTICES ACT FAIL ................................................................... 20

     a.    Plaintiffs' Interpretation of the 2=1 Statement Constitutes Neither a
           Deceptive Act Nor an Unfair Practice ....................................... 20

     b.    Plaintiffs Have Failed to Show Causation with Respect to the 2=1 Statement.... 22

     c.    FDUTPA's "Safe Harbor" Provision Bars Plaintiffs' Claims ............................ 22

     d.    Plaintiffs Have Not Plausibly Alleged A *Per Se* Violation of FDUTPA............. 22

X.    PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE
     CLAIM UNDER NEW YORK'S GENERAL BUSINESS LAW §§ 349 OR 350 ......... 23

     a.    Because No Reasonable Consumer Would Be Misled By Goli's Statements
           As Alleged Here, Plaintiffs Cannot State an Actionable Claim Under the
           NYGBL ....................................................................................... 23

b.     Plaintiffs Do Not Plead the 2=1 Statement Caused Plaintiff Libman's Injury ....24

c.     Goli's Compliance with Federal Law Precludes Any Cause of Action Under the NYGBL On Account of the NYGBL's Safe Harbor Provisions....................24

XI.     PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED BREACH OF ANY EXPRESS WARRANTY.................................................................................................25

XII.     CONCLUSION .............................................................................................................26

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
5
  275 F. Supp. 3d 910 (N.D. Ill. 2017) ...............................................18, 21, 22

6
*Alan Neuman Prods., Inc. v. Alrbight*,
  862 F.2d 1388 (9th Cir. 1988)...............................................................10
7

*Ashcroft v. Iqbal*,
8
  556 U.S. 662 (2009) ...............................................................................10

9
*Beasley v. Lucky Stores, Inc.*,
10
  400 F. Supp. 3d 942, 948 (N.D. Cal. 2019) ...........................................16

11
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................10
12

13
*Berenguer v. Warner-Lambert Co.*,
  2003 WL 24299241 (Fla. Cir. Ct. July 31, 2003) ..................................22

14
*Brazil v. Dole Food Co., Inc.*,
15
  935 F. Supp. 2d 947 (N.D. Cal. 2013) ...................................................14

16
*Brickman v. Fitbit, Inc.*,
  2016 WL 3844327 (N.D. Cal. July 15, 2016).........................................14
17

18
*Brockey v. Moore*,
  107 Cal. App. 4th 86 (2003)...................................................................18

19
*Coe v. General Mills, Inc.*,
20
  2016 WL 4208287 (N.D. Cal. Aug. 10, 2016)........................................11

21
*Coffelt v. Kroger Co.*,
  2017 WL 10543343 (C.D. Cal. Jan. 27, 2017)........................................26
22

23
*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990)..............................................................12, 13

24
*Davidson v. Apple, Inc.*,
25
  2018 WL 2325426 (N.D. Cal. May 8, 2018) ..........................................22

26
*De Salles v. Cook*,
  2016 WL 9113995 (C.D. Cal. May 12, 2016)......................................10, 13

27

28

*Dimond v. Darden Restaurants, Inc.*,
   2014 WL 3377105 (S.D.N.Y. July 9, 2014) ...................................................................23

*Eirman v. Olde Discount Corp.*,
   697 So.2d 865 (Fla. Dist. Ct. App. 1997).....................................................................22

*Flagg v. Yonkers Sav. & Loan Ass'n, FA*,
   307 F. Supp. 2d 565 (S.D.N.Y. 2004), aff'd, 396 F.3d 178 (2d Cir. 2005) ...........24

*Gross v. Symantec Corp.*,
   2012 WL 3116158 (N.D. Cal. July 31, 2012) ...................................................10, 14, 15

*Hadley v. Kellogg Sales Co.*,
   273 F. Supp. 3d 1052 (N.D. Cal. 2017) ....................................................................25, 26

*Hairston v. S. Beach Beverage Co.*,
   2012 WL 1893818 (C.D. Cal. May 18, 2012)................................................................19

*Hasemann v. Gerber Prods. Co.*,
   331 F.R.D. 239 (E.D.N.Y. 2019) ................................................................................24

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011)....................................................................................18

*In re Hyderoxycut Marketing and Sales Practices Litigation*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011) ........................................................................14

*Keegan v. Am Honda Motor Co., Inc.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ................................................................................18

*Keith v. Buchanan*,
   173 Cal. App. 3d 13 (1985)..........................................................................................26

*Khasin v. R.C. Bigelow, Inc.*,
   2016 WL 4502500 (N.D. Cal. Aug. 29, 2016)..............................................................15

*Kommer v. Bayer Consumer Health*,
   252 F. Supp. 3d 304 (S.D.N.Y. 2017)......................................................................23, 24

*Kuenzig v. Kraft Global Foods, Inc.*,
   2012 WL 366927 (M.D. Fla. Feb. 3, 2012) ................................................................21

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011)..................................................................................................16

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (20093).....................................................................................18

3
DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC

*Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*,
    481 F. App'x 622 (2d Cir. 2012) ....................................................................................24

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir 2000) (en banc) ........................................................................26

*Maor v. Dollar Thrifty Automotive Group, Inc.*,
    2018 WL 4698512 (S.D. Fla. Sept. 30, 2018) ................................................................20

*Martin v. Medtronic, Inc.*,
    2017 WL 825410 (E.D. Cal. Feb. 24, 2017) ...................................................................25

*McKinniss v. Sunny Delight Beverages Co.*,
    2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) .................................................................17

*Melendez v. One Brands, LLC*,
    2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) ................................................................19

*National Numismatic Certification, LLC v. eBay, Inc.*,
    2008 WL 2704404 (M.D. Fla. July 8, 2008) ..................................................................20

*In re Obalon Therapeutics, Inc.*,
    2019 WL 4729461 (S.D. Cal. Sept. 25, 2019) ................................................................13

*Pardini v. Unilever United States, Inc.*,
    961 F. Supp. 2d 1048 (N.D. Cal. 2013) .........................................................................10

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litigation*,
    2017 WL 4676585 (C.D. Cal. Oct. 10, 2017) ................................................................10

*Red v. Kraft Foods, Inc.*,
    2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ................................................................19

*Red v. The Kroger Co.*,
    2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) ...........................................................11, 12

*Reynolds v. Wal-Mart Stores, Inc.*,
    2015 WL 1879615 (N.D. Fla. Apr. 23, 2015) ................................................................11

*Ries v. Arizona Beverages USA, LLC*,
    2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ...............................................................17

*Shields v. Alere Home Monitoring, Inc.*,
    2015 WL 7272672 (N.D. Cal. Nov. 18, 2015) ...............................................................13

*Snyder v. Green Roads of Florida, LLC*,
    430 F. Supp. 3d 1297 (S.D. Fla. 2020) ..........................................................................22

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television
    Litig.*,
        758 F. Supp. 2d 1077 (S.D. Cal. 2010) .................................................................12

*State Farm Mut. Auto Ins. Co. v. Medical Service Center of Florida, Inc.*,
        103 F. Supp. 3d 1343 (S.D. Fla. 2015)..................................................................20

*Stewart v. Riviana Foods Inc.*,
        2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) ......................................................24

*Vess v. Ciba-Geigy Corp. USA*,
        317 F.3d 1097 (9th Cir. 2003).............................................................................14

*Williams v. Gerber Prods. Co.*,
        552 F.3d 934 (9th Cir. 2008)...............................................................................17

*Workman v. Plum Inc.*,
        141 F. Supp. 3d 1032 (N.D. Cal. 2015) ...............................................................19

*Zlotnick v. Premier Sales Group, Inc.*,
        480 F.3d 1281 (11th Cir. 2007)...........................................................................21

**Statutes**

21 U.S.C. § 343(a)(1) ............................................................................................11, 15

Cal. Health & Saf. Code, § 110100(a) ........................................................................11

**Out of State Statutes**

Fla. Stat. § 501.201...................................................................................................20

N.Y. GEN. BUS. Law § 349 ....................................................................................23, 24

N.Y. GEN. BUS. Law § 349(d) ....................................................................................24

N.Y. GEN. BUS. Law § 350-d ....................................................................................24

**Federal Regulations**

21 C.F.R. § 101.9(b)...................................................................................................11

21 C.F.R. § 101.12(b)........................................................................................7, 11, 12

21 C.F.R. § 101.12's...................................................................................................15

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC

**Federal Rules**

Rule 8 ........................................................................................................................16, 25

Rule 9(b) ...............................................................................7, 8, 9, 10, 13, 14, 15, 16, 17, 23

Rule 12(b)(6) ..............................................................................................................10

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC

## I.      INTRODUCTION

Plaintiffs Jeremy Borgia, Juliet Osmer, and Abraham Libman ("Plaintiffs") wrongly allege that Goli Nutrition Inc. ("Defendant" or "Goli") misleadingly markets its Apple Cider Vinegar Gummies ("Product" or "gummies"). Specifically, Plaintiffs point to two of Defendant's statements they claim are inaccurate: "2 gummies is equal to 1 shot of Apple Cider Vinegar" (the "2=1 Statement") and "Apple Cider Vinegar Gummies produce the same age-old benefits of traditional Apple Cider Vinegar without the unpleasant taste!" (the "Benefits Statement") (together, the "Statements"). But the Statements actually made by Goli are not even Plaintiffs' focus—instead, Plaintiffs claim that the Statements are misleading because two gummies allegedly contain less acetic acid than 30 milliliters of apple cider vinegar ("ACV"). Plaintiffs ignore, or gloss over, the fact that the Statements made by Goli make claims about ACV, not acetic acid, as well as that 30 milliliters of ACV is not "1 shot" of ACV. No reasonable consumer of ACV gummies would be misled as alleged by Plaintiffs. Each of Plaintiffs' claims is without merit and subject to dismissal for this and several other reasons, as follows:

First, Plaintiffs' claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"). Plaintiffs allege that the 2=1 Statement violates the FDCA's catch-all provision, and thus California's Sherman Law. This claim is barred because the 2=1 Statement follows federal regulations setting vinegar's serving size at one tablespoon. 21 C.F.R. § 101.12(b).

Second, the Benefits Statement cannot form the basis of a viable cause of action because it is a qualitative assertion of product superiority that is nothing more than non-actionable puffery.

Third, because Plaintiffs' allegations sound in fraud, they must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. However, Plaintiffs' claims fall well short of that standard in several critical areas, and thus fail to state a cognizable claim for relief.

Fourth, the California, Florida, and New York consumer protection law violations alleged in the Complaint fail for a number of reasons. Dismissal of these statutory claims is justified because no reasonable consumer would think the Statements, which do not reference acetic acid, guarantee a specific acetic acid content—and any ambiguity is, in any event, clarified by the "Supplement

Facts" listed on the product label that unambiguously and accurately indicate that one two-gummy serving contains 1000 milligrams of ACV with 5% acetic acid. Plaintiffs have also failed to allege causation with respect to the Florida and New York causes of action, because neither Osmer nor Libman are alleged to have viewed the 2=1 Statement on the Goli website and could not have seen it on the Product label. Moreover, the Product's 2=1 Statement qualifies for the "safe harbor" provisions included in both the Florida and New York statutes, and therefore is not actionable.

Finally, no claim for express warranty was properly alleged because no "specific and unequivocal written statement" that can be construed as an explicit guarantee is identified.

For all of these reasons, Defendant Goli respectfully requests that Plaintiffs' First Amended Complaint ("FAC" or "Complaint") be dismissed in its entirety, with prejudice.

## II.    BACKGROUND

Plaintiff Borgia allegedly purchased Goli's ACV gummies in October and November of 2019. *See* First Amended Complaint ("FAC"), ¶ 11. Plaintiff Osmer made her purchase "from January 2018 to July 2019." *Id*., ¶ 12. Plaintiff Libman made his purchase at an unspecified time in 2019. *Id.* at ¶ 13. Prior to making their purchases, Plaintiffs Borgia and Osmer (but not Libman) claim to have reviewed the 2=1 Statement, and Plaintiffs Osmer and Libman (but not Borgia) are alleged to have viewed the Benefits Statement. *Id.* at ¶ 11, 12, 13. Only Borgia is specifically alleged to have reviewed the 2=1 Statement on Defendant's website. *Id.* at ¶ 11. All Plaintiffs claim to have also reviewed other unspecified "labels, disclosures, warranties, and marketing materials" before they purchased the Product. *Id.* Based on what they saw, Plaintiffs claim they bought the Product at "a substantial price premium" in place of "comparable products" (though they do not indicate what this "price premium" was or which "comparable products" they were considering). *Id.* However, it is unclear what, exactly, Plaintiffs claim to have viewed. Included in the Complaint are various photographs, two of which are notable. The first is a screenshot from Defendant's website depicting the front label of the Product, which bears the 2=1 Statement. *Id*., ¶ 23. The second is a photograph of a hand holding up what is presumably one of the Products that Plaintiffs actually purchased to display its back label. *Id.*, ¶ 24. Why would Plaintiffs choose not to use a picture of the front label of the Product as actually purchased? The answer is that doing so would defeat the entire premise

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC

of Plaintiffs' claims, because the 2=1 Statement was *removed* from the Product's label in June of 2019. Declaration of Kathleen Power In Support Motion to Dismiss First Amended Complaint ("Power Decl."), ¶ 3; Exhibits A and B to Power Decl. (true and correct copies of the Product label as it appeared prior to, and the latest version of the label after, June 2019). And even prior to June 2019, the 2=1 Statement did not appear on the labels of any Products sold in brick and mortar retail stores. *Id.* Rather, the version of the Product's label bearing the 2=1 Statement was only affixed to some (but not all) bottles sold through online purchases from Goli's website prior to June 2019, and of the products sold online prior to June 2019, only a relatively small number had a label including the 2=1 Statement. *Id.* Osmer and Libman allege having purchased their Products in-store, and so *could not* have seen the 2=1 Statement as it was only ever included on the labels of Products sold online. *Id.* Nor was the 2=1 Statement present on any in-store marketing materials. *Id*, ¶ 4. Finally, in contrast to Borgia, Osmer and Libman are not alleged to have reviewed the 2=1 Statement on Defendant's website—and so could not possibly have seen it at all prior to purchasing the Product.[1] FAC, ¶¶ 12, 13.

Plaintiffs seek to represent a nationwide class of persons "who purchased Goli branded dietary supplements during the class period[.]" FAC, ¶ 39. Additionally, Borgia seeks to represent a California Subclass, Osmer seeks to represent a Florida Subclass, and Libman seeks to represent a New York subclass. *See id.*, ¶¶ 40, 41, 42. Borgia brings claims individually and on behalf of the California subclass under California's False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), and Consumer Legal Remedies Act ("CLRA"). Osmer brings claims individually and on behalf of the Florida subclass under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Libman brings claims individually and on behalf of the New York subclass under New York's General Business Law ("NYGBL"). Finally, Plaintiffs bring a claim for breach of express warranty on behalf of the nationwide class, the California subclass, and the Florida subclass (but not the New York subclass). Plaintiffs seek statutory, compensatory, treble, and punitive damages, as well as injunctive relief, restitution, attorneys' fees, and costs of suit.

---

[1] Indeed, and curiously, Libman is not even alleged to have seen the 2=1 Statement at all.

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC

## III.    LEGAL STANDARD

### a.  Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint that provides no more than a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly,* 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678.  In deciding a 12(b)(6) motion, "a court can consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice."  *De Salles v. Cook*, 2016 WL 9113995, at *2 (C.D. Cal. May 12, 2016) (citing *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

### b.  Rule 9(b)

Complaints grounded in fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). They must state "the time, place, and specific content of the false representations" and identify all parties thereto. *See Alan Neuman Prods., Inc. v. Alrbight*, 862 F.2d 1388, 1392-93 (9th Cir. 1988). Where a plaintiff pleads a misrepresentation, "Rule 9(b) demands direct quotations" or other allegations sufficient to identify what the defendant "actually said." *Gross v. Symantec Corp*., 2012 WL 3116158, at *4–5 (N.D. Cal. July 31, 2012).

## IV.    PLAINTIFFS' CLAIMS BASED UPON THE 2=1 STATEMENT ARE PREEMPTED BY THE FDCA

The statement "2 gummies is equal to 1 shot of Apple Cider Vinegar" complies with specific federal regulations, and thus all of Plaintiff's claims related to the 2=1 Statement are preempted by federal law. "The Supremacy Clause grants Congress the power to preempt state law" when it sets forth requirements that are not identical to those imposed by federal law. *See, e.g., In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litigation,* 2017 WL 4676585, at *4 (C.D. Cal. Oct. 10, 2017). The Federal Food, Drug, and Cosmetic Act ("FDCA"), "as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), sets forth a comprehensive set of food labeling requirements." *Pardini v. Unilever United States, Inc.,* 961 F. Supp. 2d 1048, 1053 (N.D. Cal. 2013).

1   Pursuant to the FDCA, a food is deemed "misbranded" if its "labeling is false or misleading in any

2   particular." 21 U.S.C. § 343(a)(1) (the "Catch-All Provision"). Though the FDCA does not include

3   a provision expressly preempting claims brought under the Catch-All Provision, "'[t]he ability to

4   bring such a claim is not unlimited,' . . . [and such claims are] barred if the challenged aspects of

5   the label complied with a specific federal regulation." *Coe v. General Mills, Inc.,* 2016 WL 4208287,

6   at \*3-4 (N.D. Cal. Aug. 10, 2016) (quoting *Reynolds v. Wal-Mart Stores, Inc.,* 2015 WL 1879615,

7   at \*12 (N.D. Fla. Apr. 23, 2015); *see also Red v. The Kroger Co.,* 2010 WL 4262037, at \*5 (C.D.

8   Cal. Sept. 2, 2010) (while the Catch-All Provision prohibits "false or misleading" label claims,

9   "nutrient content claims that *are permitted* under federal law . . . by definition, are not considered

10  'false or misleading' under federal law.") (emphasis in original); *Reynolds,* 2015 WL 1879615, at

11  \*12 ("[W]here challenged conduct is expressly required or permitted by FDA regulations, the claims

12  fall within the core of the preemption provision because they would impose different requirements

13  on precisely those aspects . . . that the FDA had approved.") (internal quotations omitted). In other

14  words, label claims that comply with federal regulations cannot be "false or misleading" under the

15  FDCA's catch-all provision, and state-law claims to the contrary are preempted. *See id.*

16      Plaintiffs claim Defendant's label and advertising are misleading under this section, and thus

17  violate the Sherman Law, which adopts "[a]ll food labeling regulations . . . adopted pursuant to the

18  [FDCA]" as California's food labeling regulations. Cal. Health & Saf. Code, § 110100(a). But the

19  2=1 Statement *complies* with specific federal regulations and thus Plaintiffs' claim that it violates

20  the Catch-All Provision is preempted by federal law. *See, e.g., Coe,* 2016 WL 4208287, at \*4.

21      Federal regulations provide that "all nutrient and food component quantities [listed on a

22  product's label] shall be declared in relation to a serving[.]" 21 C.F.R. § 101.9(b). The serving size

23  for vinegar is one tablespoon, which is equivalent to 15 milliliters. 21 C.F.R. § 101.12(b). Further,

24  one tablespoon of liquid ACV weighs 14.9 grams, and ACV is 93.81% water.[2] Accordingly, to

25  calculate the dry weight of one tablespoon of ACV, 93.81% of 14.9 grams must be subtracted from

26  14.9 grams. 93.81% of 14.9 grams is 13.97769, and 14.9 grams minus 13.97769 is approximately

27  _____

28  [2] *See* U.S. Dept. of Agric., Vinegar, cider, (Aug. 31, 2020, 9:25 PM), publicly available at
    https://fdc.nal.usda.gov/fdc-app.html#/food-details/173469/nutrients.

1    .9223 grams. Thus, the dry weight of one serving, or "shot," of ACV is approximately .9223 grams.

2    As Plaintiffs admit, "[t]wo of Defendant's Gummies equal 1000mg [or one gram] of ACV." FAC,

3    ¶ 32. Accordingly, by Plaintiffs' own allegations, the challenged statement is not only true, but

4    conservative: two gummies do not just "equal" one shot of ACV, but actually contain roughly 8%

5    *more* ACV than one tablespoon of liquid ACV.

6        Plaintiffs' assertion that "a full shot of ACV is equal to . . . 30ml[,]" FAC, ¶ 33, is unavailing

7    because 30 milliliters is twice the recommended serving size for vinegar. 21 C.F.R. § 101.12(b).

8    Plaintiffs' position is based on a serving size that is inconsistent with federal regulations, and

9    through their state-law claims they seek to impose on Defendant requirements that are not identical

10   to federal law. The 2=1 Statement complies with federal regulations setting the serving size for

11   vinegar at one tablespoon (and including more than that amount of dried ACV), and thus

12   "by definition, [is] not considered 'false or misleading' under federal law." *Red,* 2010 WL 4262037,

13   at *5. As such, Plaintiffs' claims are preempted, and the Complaint should be dismissed in full.

14   **V.    THE BENEFITS STATEMENT CONSTITUTES PUFFERY AND IS NOT
              ACTIONABLE**

15

16       Plaintiffs' Benefits Statement claims are also dismissible as non-actionable puffery. *Cook,*

17   *Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990)

18   (collecting cases and explaining that district courts may decide whether a statement is puffery on a

19   12(b)(6) motion). Only "misdescriptions of specific or absolute characteristics of a product are

20   actionable[]" while "[v]ague or highly subjective claims about product superiority" are not. *In re*

21   *Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp.

22   2d 1077, 1089 (S.D. Cal. 2010) (internal citations omitted).

23       Goli's statement that "Apple Cider Vinegar Gummies produce the same age-old benefits of

24   traditional Apple Cider Vinegar without the unpleasant taste!" is just the sort of vague, qualitative

25   statement "about product superiority" that courts routinely find to be non-actionably puffery.

26   Indeed, the Product's label does not list *which* benefits can be attributed to ACV[3], and the Benefits

27   _____

28   [3] Though Defendant's website allegedly listed certain of the benefits of ACV, these benefits are

1    Statement makes no claim about "specific or absolute characteristics" of the Product. The closest

2    thing to an actionable claim in the Benefits Statement (which is not close at all) is the claim that the

3    Product tastes better than pure ACV. But that claim is not targeted in Plaintiffs' Complaint—which

4    Goli presumes is because it is accurate.

5           Advertisements comparing one product to another and vaguely implying that one is superior

6    constitute puffery, and claims based thereon are subject to dismissal. *Cook* is instructive here. In

7    that case, the court found that advertisements implying a collection agency "offer[ed] the same

8    collection services as lawyers at a lower or more competitive price" were non-actionable puffery

9    because "any implication that [the agency had] comparable services to attorneys at lower rates are

10   general assertions of superiority rather than factual misrepresentations." 911 F.2d at 245-46.

11   Defendant's claim that the Product offers the same benefits as traditional ACV with a better taste

12   cannot be distinguished from the *Cook* defendants' claim that they offered the same services as

13   attorneys with a better price. *See also In re Obalon Therapeutics, Inc.,* 2019 WL 4729461, at *14

14   (S.D. Cal. Sept. 25, 2019) ("Statements such as 'overcome the limitations of traditional intragastric

15   balloons' . . . are nothing more than expression of corporate optimism and puffing.") (internal

16   citations omitted); *Shields v. Alere Home Monitoring, Inc.*, 2015 WL 7272672, at *10 (N.D. Cal.

17   Nov. 18, 2015) (holding that representations that a blood-testing device was a "convenient

18   alternative to traditional lab tests" were non-actionable puffery).

19          Accordingly, Plaintiffs cannot pursue any cause of action in the Complaint that is based on

20   their interpretation of the Benefits Statement.

21   **VI.    PLAINTIFFS' COMPLAINT DOES NOT SATISFY RULE 9(B)'S**
              **HEIGHTENED PLEADING STANDARD**
22

23          Plaintiffs' claims under California's Unfair Competition Law ("UCL"), False Advertising

24   Law ("FAL"), Consumer Legal Remedies Act ("CLRA"), Florida's Deceptive and Unfair Trade

25   Practices Act ("FDUTPA") and New York's General Business Law ("NYGBL") are grounded in

26   _____

27   not listed on the label and do not form part of the Benefits Statement – nor are Plaintiffs alleged to
     have seen them. *See* FAC, ¶ 2 ("Defendant claims on their website . . . that ACV has many
28   purported benefits such as: "a. Supports Healthy Digestion; b. Helps Manage Weight; c. Helps
     Your Body Detoxify; d. Boosts Immunity; e. Enhances Energy; and f. a Healthy Heart.").

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC

1   alleged fraud, and accordingly are subject to Rule 9(b)'s heightened pleading standard. *See, e.g.,*

2   *Brickman v. Fitbit, Inc.,* 2016 WL 3844327, at *2 (N.D. Cal. July 15, 2016) (acknowledging that

3   Rule 9(b)'s "requirements apply to the UCL, FAL, CLRA, [and] FDUTPA . . . claims in the

4   complaint[.]"); *Brazil v. Dole Food Co., Inc.,* 935 F. Supp. 2d 947, 963-964 (N.D. Cal. 2013)

5   (applying Rule 9(b)'s "stringent requirements" to UCL, FAL, and CLRA claims); *In re Hyderoxycut*

6   *Marketing and Sales Practices Litigation,* 801 F. Supp. 2d 993, 1005-06 (S.D. Cal. 2011) (applying

7   Rule 9(b)'s standard to claims brought under the CLRA, UCL, FDUTPA, and NYGBL). Factual

8   allegations that do not meet the requirements of Rule 9(b) deprive the court of the opportunity to

9   "determine exactly how [a defendant] advertised its product[]" and are "too vague to be actionable

10  in federal court." *Gross,* 2012 WL 3116158, at *5. Such is the case here: Plaintiffs have failed to

11  allege facts with sufficient particularity as to several key issues.

12          The Complaint alleges that Plaintiffs reviewed the 2=1 Statement and/or Benefits Statement

13  and also "the accompanying labels, disclosures, warranties, and marketing materials," which they

14  purportedly understood to be "representations and warranties by Defendant that two of the Products

15  is equal to 1 shot of Apple Cider Vinegar[.]" FAC, ¶¶ 11, 12, 13. These vague factual allegations

16  are not sufficient to identify what materials Plaintiffs reviewed, what representations they contained,

17  where they were found, why Plaintiffs understood them to be "representations and warranties," or

18  why Plaintiffs relied on them. Further, the Complaint alleges that Plaintiffs "paid a premium for

19  Defendant's Product over comparable products that were not promoted with the misrepresentations

20  at issue here[,]" FAC, ¶ 6, without specifying the amount of "premium" paid or which "comparable

21  products" Plaintiffs would otherwise have purchased. The Complaint also claims that "Goli knew

22  that the labeling of the Product is false and misleading to a reasonable customer" without providing

23  facts alleging how Defendant knew this. *Id.,* ¶ 14.

24          Further, as to Plaintiff Osmer, the Complaint conspicuously fails to specify the "where" of

25  the misconduct alleged. *See Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003)

26  (explaining that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and

27  how' of the misconduct charged.") (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997)).

28

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC

1   Plaintiffs do not explain where Osmer saw the 2=1 Statement.[4] This is an important omission on

2   Plaintiffs' part, because, as discussed above, the 2=1 Statement was taken off of the labels of

3   Products sold online in June of 2019[5] and was *never* included on the labels of Products sold in retail

4   stores (or in any other in-store marketing materials). *See* Power Decl., ¶ 3. Thus, Plaintiffs'

5   motivation for failing to allege this fact with particularity appears clear: because Osmer purchased

6   the Product in-store, she could not have seen the 2=1 Statement on the Product's label. Nor do

7   Plaintiffs allege that Osmer read the 2=1 Statement on Defendant's website. *See* FAC, ¶ 12.

8   Plaintiffs' factual allegations do not comport with Rule 9(b)'s strict pleading requirements.

9   Rather, they vaguely allege misconduct without specifying "exactly how [Goli] advertised its

10   product." *Gross,* 2012 WL 3116158, at *5. Without more, Defendant must guess at the misconduct

11   in which it is alleged to have engaged. Accordingly, Plaintiffs' claims should be dismissed.

12   **VII.   PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED A MISLABELLING CLAIM UNDER THE UCL, FAL, AND CLRA**

14   To sustain a UCL, FAL, and CLRA mislabeling claim, a plaintiff must show that (1) the

15   labeling statement violates labeling regulations, (2) they actually relied on the statement in deciding

16   to buy the product, and (3) they suffered economic harm. *Khasin v. R.C. Bigelow, Inc.*, 2016 WL

17   4502500, at *2 (N.D. Cal. Aug. 29, 2016) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310,

18   323 (2011)). Plaintiffs' California UCL, FAL and CLRA claims fail because they do not plead a

19   regulatory violation, or that Plaintiff Borgia actually relied on the 2=1 Statement.

20   **a.   The Product Does Not Violate Labeling Regulations**

21   As addressed in § IV above, Plaintiffs' claim that the Product's labeling violates 21 U.S.C.

22   § 343(a)(1)'s prohibition against "labeling [that] is false or misleading in any particular" fails

23   because the Product's label complies with 21 C.F.R. § 101.12's recommended serving size for

---

[4] This omission appears to be intentional, as, in contrast, Plaintiff Borgia is alleged to have "reviewed information about the Products on the Products' label as well as Defendant's website, including the statement that '2 gummies is equal to 1 shot of Apple Cider Vinegar.'" FAC, ¶ 11.

[5] Further, as noted in section II above, the version of the Product's label bearing the 2=1 Statement was only affixed to some (but not all) bottles sold through online purchases from Goli's website prior to June 2019, and of the products sold online prior to June 2019, only a relatively small number had a label including the 2=1 Statement. *See* Power Decl., ¶ 3.

vinegar. Without a viable allegation of a particular labeling regulation violation, Plaintiffs' UCL, FAL, and CLRA claims cannot satisfy the necessary first element of a mislabeling cause of action and therefore must be dismissed.

**b.   Plaintiffs Do Not Plead Actual Reliance On The Product's Acetic Acid Content**

Plaintiffs also fail to plead reliance under the UCL, FAL, and CLRA. To prove reliance, "a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct…." *Kwikset Corp.*, 51 Cal. 4th at 327; *see also id*. at 326 (cases based on "a fraud theory involving false advertising and misrepresentations to consumers" must show causation and, thus, reliance, "the causal mechanism of fraud"). So, Plaintiffs must plead that Goli's alleged misrepresentations induced Plaintiff Borgia's purchases. Plaintiffs fail to plead reliance because the alleged cause of Borgia's injuries (the purported lack of sufficient acetic acid in the ACV gummies) was not a material element of his purchasing decisions. The only statement Borgia claims to have relied on is: "2 gummies is equal to 1 shot of Apple Cider Vinegar." *See* FAC, ¶ 11.[6] Borgia is not alleged to have relied on anything relating to acetic acid content.

*Beasley v. Lucky Stores, Inc.* is instructive on this point. In *Beasley*, the plaintiff purchased flavored coffee creamer on which the label read "0g Trans Fat," but which contained partially hydrogenated oil, which the plaintiff claimed was an artificial form of trans fat. *See* 400 F. Supp. 3d 942, 948 (N.D. Cal. 2019). The putative class was defined as purchasers after January 1, 2010, but plaintiff admitted he did not know until January 2017 that trans fat is harmful, and did not allege he made any purchases before January 2017. *Id*. at 948, 959-60. Because plaintiff did not show the "0g Trans Fat" statement was material to his decision to buy the flavored coffee creamer, the court found that the allegations in plaintiffs' complaint were "inadequate to plead reliance." *Id*. at 960.

Similarly, Plaintiffs here refer to the 2=1 Statement throughout their Complaint, but the alleged source of injury is the Product's acetic acid content. FAC, ¶ 27. Just as in *Beasley*, Plaintiffs

---

[6] Plaintiffs claim that Borgia "reviewed information about the Products" in addition to the 2=1 Statement, but such vague allegations are insufficient to satisfy Rule 8, much less Rule 9(b). *See* FAC, ¶ 11. Moreover, Plaintiffs link everything Borgia reviewed in addition to the 2=1 Statement back to that statement by alleging those other materials were "understood … as representations and warranties … that two of the Products is equal to 1 shot of Apple Cider Vinegar[.]" *Id*.

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC

do not allege that the Product's acetic acid content was a material factor in Borgia's purchase decisions, and do not even allege that Borgia knew ACV contains acetic acid (or that he knew what acetic acid was) before his purchases. Rather, Borgia's only reliance claim is that he relied on Goli's *true* "representations and warranties … that two of the Product is equal to 1 shot of Apple Cider Vinegar." *See id.*, ¶ 11.

Even ignoring Plaintiffs' failure to plead reliance or satisfy Rule 9(b)—and assuming for the sake of argument that the website information, "labels, disclosures, warranties, and marketing materials" Plaintiffs allege Borgia reviewed before deciding to buy the Product made him aware of acetic acid—that same information also clearly identifies the *amount* of acetic acid in the Product. Specifically, as discussed above, the Product's "Supplement Facts" unambiguously and accurately indicate that one two-gummy serving contains 1000 milligrams of ACV with 5% acetic acid. *See* FAC, ¶¶ 20, 32. It is therefore disingenuous for Plaintiffs to make Borgia out to be a sophisticated consumer who reviewed every possible source of information available to him about the Product—*except* the part he claims was most important to his purchasing decisions and which purportedly misled him.

Plaintiffs' failure to plead that the Product's acetic acid content was material to Borgia's purchasing decisions renders him unable to establish reliance. And, without reliance, Plaintiffs cannot state a viable mislabeling claim under the UCL, FAL, and CLRA.

## VIII.   A "REASONABLE CONSUMER" WOULD NOT BE DECEIVED BY THE "TWO EQUALS ONE" STATEMENT ON THE LABEL AND, IN ANY EVENT, COULD CLARIFY ITS MEANING BY SIMPLY REVIEWING THE SUPPLEMENT FACTS

Where, as here, UCL, FAL, and CLRA claims are grounded in fraud, a reasonable consumer standard applies and requires showing an allegedly misleading statement is "likely" to deceive the public. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Ries v. Arizona Beverages USA, LLC*, 2013 WL 1287416, at *3 (N.D. Cal. Mar. 28, 2013). Likely means *probable*, not just possible. *McKinniss v. Sunny Delight Beverages Co.*, 2007 WL 4766525, at *3 (C.D. Cal. Sept. 4, 2007) (citing *Freeman v. Time, Inc.*, 68 F. 3d 285, 289 (9th Cir. 1995)).

A reasonable consumer is an "ordinary consumer within the larger population," not the "least

sophisticated" nor an "*unwary* consumer." *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (citations omitted). It follows that a reasonable consumer is also not an "overly suspicious" consumer. *Id.* "A representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (20093). Here, Borgia in no way represents a "reasonable consumer" of the Product.

As discussed below in the context of Plaintiffs' FDUTPA and NYGBL claims, which also require a showing of probable deception,[7] nothing about the 2=1 Statement would lead a reasonable consumer to assume the Product has a specific acetic acid content because the phrase makes no reference to acetic acid whatsoever. Only a consumer who has conducted substantial research would associate the 2=1 Statement with scientific studies on acetic acid in ACV and health benefits at various content levels.

And, to the extent a reasonable consumer could find the 2=1 Statement unclear with respect to the Product's nutrient composition, any ambiguity is easily clarified by reference to the Product's label and the substantial amount of information on Goli's website, which Plaintiffs purportedly reviewed before purchasing the Product. *See* FAC, ¶¶ 11-13. Indeed, because "the primary evidence in a false advertising case is the advertising itself[,]" *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003), a dismissal as a matter of law is proper when the advertising or labeling belie any plausible deception claim.

Here, the acetic acid information included on the Product label belies any plausible deception claim. The Product's labeling includes a Supplement Facts panel, which advises consumers that each gummy contains 500 mg of ACV, 5% of which consists of acetic acid. *See* FAC, ¶ 20. In other

---

[7] *See, e.g. Keegan v. Am Honda Motor Co., Inc.*, 284 F.R.D. 504, 541 (C.D. Cal. 2012) (finding Florida and California both have "the same causation and reliance standard [in their unfair competition laws]," with "small differences in wording"); *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 919-20 (N.D. Ill. 2017) (noting plaintiffs brought claims under "various state consumer protection statutes[,]" including the FDUTPA, CLRA, UCL, and NYGBL, and explaining that the "parties cite precedents applying the[] [state] laws interchangeably and agree that, while they differ in certain particulars, all share a common requirement: to state a claim, a plaintiff must allege conduct that plausibly could deceive a reasonable consumer").

1   words, a simple and reflexive 90-degree turn to the supplement facts on the Product's label

2   completely dispels any notion that a reasonable consumer would be deceived by the 2=1 Statement.

3       Moreover, California consumer protection claims cannot be premised upon an allegation that

4   a reasonable consumer "will read a true statement on a package and … assume things about the

5   products *other than* what the statement actually says." *Red v. Kraft Foods, Inc.*, 2012 WL 5504011,

6   at *3 (C.D. Cal. Oct. 25, 2012) (emphasis in original). Yet Plaintiffs allege that reasonable

7   consumers will read the true 2=1 Statement and make assumptions about the Product's acetic acid

8   content, despite the fact that Plaintiffs' "reasonable consumer" reads every substantiation study and

9   supporting information offered on a product. Plaintiffs' allegation is simply untenable. "Every

10  reasonable shopper knows that the devil is in the details," and that "any potential ambiguity could

11  be resolved by the back panel of the products[.]" *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035

12  (N.D. Cal. 2015).

13      As discussed, the 2=1 Statement is a true statement and a reasonable consumer would not

14  read it and assume specific acetic acid levels, even if they knew ACV has acetic acid in it. And, if a

15  reasonable consumer felt the 2=1 Statement was ambiguous, they need only review the label and

16  other Product information—which Plaintiffs admit Borgia did. *See* FAC, ¶ 11; *see also Hairston v.*

17  *S. Beach Beverage Co.*, 2012 WL 1893818, at *4-5 (C.D. Cal. May 18, 2012) (misleading language

18  on vitamin-enriched drink label cannot support claim as it was not used "in a vacuum" and any

19  ambiguities were clarified by "detailed information … in the ingredient list" explaining its contents).

20      In *Melendez v. One Brands, LLC*, 2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020), a statement

21  on the front of defendant's nutrition bars read "1 g sugar." Plaintiff argued that it deceptively

22  indicated the bars were low-carb or low-calorie, but the court found a "reasonable consumer" would

23  look to the nutrition facts to clarify ambiguities. Since those facts objectively clarified any

24  confusion, Melendez's claim failed. *Id.* at *6-7. Plaintiffs' allegations here are similar. As in

25  *Melendez*, Plaintiffs are manufacturing ambiguity by drawing an inference from the advertising

26  statement rather than relying on its plain meaning. Just as the plaintiff in *Melendez* inferred from "1

27  g sugar" that the bar was low-calorie or low-carb, Plaintiffs here purportedly infer from the 2=1

28  Statement that a serving contains 1,500 mg of acetic acid. *See* FAC, ¶¶ 31-33. But any questions

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC

1   raised by inferences are easily clarified by reference to the nutrition facts and website information.

2   Indeed, the Complaint demonstrates the Product's acetic acid content is easily derived from those

3   facts. *Id.*, ¶ 32.

4          In sum, no reasonable consumer would be deceived by the 2=1 Statement. And, if a

5   reasonable consumer wanted to know about acetic acid content, they could review the materials

6   Borgia is alleged to have reviewed.[8] Accordingly, the reasonable consumer standard dictates that

7   Plaintiffs' UCL, FAL, and CLRA claims must be dismissed.

8   **IX.   PLAINTIFFS' CLAIMS UNDER THE FLORIDA DECEPTIVE AND UNFAIR
         TRADE PRACTICES ACT FAIL**

9

10         Like Plaintiff Borgia's claims under California's consumer protection statutes, Plaintiff

11  Osmer's claims under FDUTPA, Fla. Stat. § 501.201, *et seq.*, fall short. In order to state a claim

12  under FDUTPA, a complaint must plausibly allege "'(1) a deceptive act or unfair practice; (2)

13  causation; and (3) actual damages.'" *National Numismatic Certification, LLC v. eBay, Inc.,* 2008

14  WL 2704404, at *23 (M.D. Fla. July 8, 2008). Plaintiffs' allegations are insufficient to satisfy the

15  first two elements.

16         **a.   Plaintiffs' Interpretation of the 2=1 Statement Constitutes Neither a Deceptive
              Act Nor an Unfair Practice**

17

18         Plaintiffs' strained interpretation of the statement "2 gummies is equal to 1 shot of Apple

19  Cider Vinegar" would never be shared by a reasonable consumer. Under FDUTPA, "[a] deceptive

20  act or practice is one that is likely to mislead consumers and an unfair practice is one that offends

21  established  public  policy  and  one  that  is  immoral,  unethical,  oppressive,  unscrupulous  or

22  substantially injurious to consumers." *State Farm Mut. Auto Ins. Co. v. Medical Service Center of*

23  *Florida, Inc.,* 103 F. Supp. 3d 1343, 1354 (S.D. Fla. 2015) (internal quotations omitted). Further,

24  "'the first element of a FDUTPA claim is only satisfied by evaluating a *reasonable consumer* in the

25  same circumstances as plaintiff.'" *Maor v. Dollar Thrifty Automotive Group, Inc.,* 2018 WL

26  4698512, at *6 (S.D. Fla. Sept. 30, 2018) (quoting *Deere Constr. v. Cemex Constr. Materials*

27  _____

28  [8] Plaintiffs themselves recite some of that information, noting the Product "contains 500mg of ACV
    with 5% Acetic Acid per one gummy." *Id.*, ¶ 20.

1    *Florida, LLC*, 2016 WL 8542540, at *3 (S.D. Fla. Dec. 1, 2016) (emphasis added). Importantly,

2    "[t]his standard requires a showing of probable, not possible, deception[.]" *Zlotnick v. Premier Sales*

3    *Group, Inc.,* 480 F.3d 1281, 1284 (11th Cir. 2007) (internal quotations omitted).

4            As discussed above, no reasonable consumer would understand the 2=1 Statement to

5    communicate anything at all about the acetic acid content of the gummies. In a similar case, the

6    plaintiff claimed that the defendant's "use of the 'percent fat free' claims in its advertising [was] an

7    unfair or deceptive act" under FDUTPA because it implied that the percentage of fat was based on

8    calories rather than weight, and thus would lead consumers to believe the products contained fewer

9    calories than they actually did. *Kuenzig v. Kraft Global Foods, Inc.,* 2012 WL 366927, at *3 (M.D.

10   Fla. Feb. 3, 2012). The court held that the "percent fat free" claim was neither deceptive nor unfair

11   because "calories [were] not referenced, and given that 'percent fat free' claims ha[d] been based

12   on weight, not calories, for the past seventeen years, [the plaintiff had] not alleged a basis upon

13   which it could be concluded that an objectively reasonable person would construe [defendant]'s

14   'percent fat free' claim as being based on the percentage of calories that come from fat." *Id.* at *4.

15   (dismissing the claims with prejudice). Similarly, here, nothing about the 2=1 Statement would

16   imply a specific acetic acid content to a reasonable consumer, because the phrase does not reference

17   acetic acid in any way.

18           Further, as also discussed above, any potential consumer confusion regarding the Product's

19   acetic acid content is clarified by the Product's supplement facts, which unambiguously show that

20   two gummies contain 1000 milligrams of Apple Cider Vinegar, with 5% acetic acid. *See* FAC, ¶ 20.

21   Under FDUTPA, as under the unfair competition statutes of California and New York, "even if a

22   statement on a package or advertisement might be ambiguous or unclear in isolation, 'the presence

23   of a disclaimer or similar clarifying language may defeat a claim of deception.'" *In re 100% Grated*

24   *Parmesan Cheese Marketing and Sales Practices Litigation,* 275 F. Supp. 3d at 922 (quoting *Fink*

25   *v. Time Warner Cable,* 714 F.3d 739, 742 (2d Cir. 2013). Thus, where an allegedly misleading

26   statement is ambiguous, "context can cure the ambiguity and defeat the claim[.]" *Id.* (dismissing

27   complaint alleging that the statement "100% Grated Parmesan Cheese" was deceptive under

28   FDUTPA, UCL, CLRA, and NYGBL.). Here, "Plaintiffs' claims are doomed by the readily

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC

accessible ingredient panels on the products that disclose" the Product's acetic acid content. *Id.* at 923. All Plaintiffs needed to do was consult the supplement facts in order to dispel any ambiguity – something a reasonable consumer surely would have done.

**b.  Plaintiffs Have Failed to Show Causation with Respect to the 2=1 Statement**

To allege causation under FDUTPA, a plaintiff must "plead that they were 'exposed to the Defendants' advertising and marketing materials alleged to constitute a deceptive trade practice' and that they 'suffered actual damages as a result of the misrepresentations' in those materials." *Berenguer v. Warner-Lambert Co.*, 2003 WL 24299241, at *2 (Fla. Cir. Ct. July 31, 2003) (quoting *Montgomery v. New Piper Aircraft, Inc.,* 209 F.R.D. 221, 229 (S.D. Fla. 2001)) (dismissing complaint because the plaintiffs "[did] not allege that they saw any of the challenged advertisements"); *see also Davidson v. Apple, Inc.,* 2018 WL 2325426, at *17 (N.D. Cal. May 8, 2018) (acknowledging that FDUTPA "require[s] proof of exposure to the allegedly fraudulent omissions [or statements].""). As discussed above, Osmer has not plausibly alleged that she saw the 2=1 Statement prior to purchasing the Product, FAC, ¶ 12, and has thus failed to plead that any alleged injury was caused by the 2=1 Statement.

**c.  FDUTPA's "Safe Harbor" Provision Bars Plaintiffs' Claims**

"FDUPTA does not apply to '[a]n act or practice required or specifically permitted by federal or state law.'" *Snyder v. Green Roads of Florida, LLC,* 430 F. Supp. 3d 1297, 1304-1305 (S.D. Fla. 2020) (quoting Fla. Stat. § 501.212(1)). Pursuant to this "safe harbor" provision, a label that complies with federal law is "immun[e] from liability[.]" *Id.*; *see also Eirman v. Olde Discount Corp.,* 697 So.2d 865, 866 (Fla. Dist. Ct. App. 1997) (holding that the plaintiff's claims fell within FDUTPA's safe harbor provision because defendant's practices were "permitted by federal law during the time period at issue[.]"). Here, as discussed in § IV, *supra*, the 2=1 Statement is specifically permitted by federal regulations setting the serving size for vinegar at one tablespoon, and Osmer's claims are barred by FDUTPA's safe harbor provision.

**d.  Plaintiffs Have Not Plausibly Alleged A *Per Se* Violation of FDUTPA**

Plaintiffs also state vaguely that the alleged 2=1 Statement "constitutes a *per se* violation of FDUTPA under Section 501.203(3)(c) because it is in violation of the Florida Food Safety Act, . . .

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC

in that said Product is misbranded." FAC, ¶ 88. However, this conclusory statement is insufficient to state a cause of action and is certainly not enough to satisfy Rule 9(b)'s pleading standard. Plaintiffs have not bothered to explain why the Product can be considered "misbranded," or even what "misbranded" means under the Florida Food Safety Act.

In short, the Complaint fails to plausibly allege the first two elements of a FDUTPA claim, is barred by the statute's safe harbor provision, and does not establish a *per se* violation of FDUTPA. Thus, Plaintiffs' FDUTPA claims should be dismissed.

## X.   PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM UNDER NEW YORK'S GENERAL BUSINESS LAW §§ 349 OR 350

With the addition of Mr. Libman as a plaintiff, the First Amended Complaint includes two new causes of action under New York's General Business Law §§ 349 (Count VIII) and 350 (Count IX). Unfortunately for Plaintiffs, their New York causes of action fare no better than their others and are subject to dismissal: First, Plaintiffs plead no actionable deceptive act or unfair practice under the NYGBL. Second, Plaintiffs fail to adequately plead causation under the NYGBL. Finally, even if Plaintiffs had otherwise stated a plausible claim, the NYGBL's safe harbor provision is a bar to liability.[9] Thus, like the other claims in their Complaint, Plaintiffs' new NYGBL claims are subject to dismissal.

### a.   Because No Reasonable Consumer Would Be Misled By Goli's Statements As Alleged Here, Plaintiffs Cannot State an Actionable Claim Under the NYGBL

Whether claiming deceptive business practice under § 349 or false advertising under § 350, "a plaintiff must demonstrate that 'a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017) (citation omitted). "Conduct is materially misleading under GBL §§ 349 and 350 if it is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Id.* at

---

[9] Plaintiffs expressly allege a *per se* violation of FDUTPA under Section 501.203(3)(c), *see* FAC, ¶ 88, but make no such allegation with respect to the NYGBL. If they had, though, or if Plaintiffs claim they do, that allegation would be (or is) defective. *See, e.g.*, *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *7 (S.D.N.Y. July 9, 2014) (holding that pleading a claim under NYGBL 349 requires each element to be alleged independently; merely incorporating alleged violations of other statutes is not permitted).

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC

1   310-11 (citation omitted). "This inquiry is an objective one, which … may be resolved as a matter

2   of law on a motion to dismiss." *Id.* at 311 (citations omitted). As explained above, *see* supra §§

3   VIII, IX(A), no reasonable consumer would be misled by the statements at issue here. *See*

4   *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 258 (E.D.N.Y. 2019) ("Both the FDUTPA and

5   sections 349 and 350 of the GBL require that a plaintiff prove that an objection, reasonable person

6   would likely have been deceived by the misrepresentations."). Accordingly, for the same reasons

7   discussed in the FDUPTA section, Plaintiffs' claims under sections 349 and 350 of the NYGBL

8   should also be dismissed.

9               **b.  Plaintiffs Do Not Plead the 2=1 Statement Caused Plaintiff Libman's Injury**

10   Plaintiffs are not reasonable consumers. But, even if they were, their NYGBL claims

11   would fail for lack of causation. Causation is essential—thus Plaintiffs must allege Goli's

12   "materially deceptive practices caused [their] statutory injury" under the NYGBL. *Kommer*, 252

13   F. Supp. 3d at 311 (citations omitted). Here, Plaintiffs do not allege Libman saw the 2=1

14   Statement before his purchase. *See* FAC, ¶ 13. Instead, Libman saw only the Benefits Statement,

15   which is not actionable. *Id.*; *see also*, supra, § V. Accordingly, since Plaintiffs have not pleaded

16   the 2=1 Statement caused Plaintiff Libman's injury, they cannot establish a plausible claim under

17   NYGBL sections 349 and 350.

18               **c.  Goli's Compliance with Federal Law Precludes Any Cause of Action Under
                   the NYGBL On Account of the NYGBL's Safe Harbor Provisions**

19

20   Finally, similarly to FDUTPA, the NYGBL contains a safe harbor provision that excludes

21   from its purview statements that comply with federal law. *See* N.Y. GEN. BUS. Law §§ 349(d),

22   350-d; *Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622, 626 (2d Cir. 2012);

23   *Stewart v. Riviana Foods Inc.*, 2017 WL 4045952, at *9 (S.D.N.Y. Sept. 11, 2017); *Flagg v.

24   Yonkers Sav. & Loan Ass'n, FA*, 307 F. Supp. 2d 565, 581 n.19 (S.D.N.Y. 2004), aff'd, 396 F.3d

25   178 (2d Cir. 2005). As discussed in sections IV, IX(C), the 2=1 Statement is permitted by federal

26   regulations. Plaintiffs' NYGBL claims are thus barred by the NYGBL's safe harbor provision.

27   Accordingly, for the reasons above, Plaintiffs have not stated a cognizable cause of action

28   under NYGBL sections 349 or 350. Plaintiffs' NYGBL causes of action should thus be dismissed.

## XI.   PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED BREACH OF ANY EXPRESS WARRANTY

Plaintiffs' express warranty claim fails because Plaintiffs do not identify any specific and unequivocal written statements about the Product that can be construed as an explicit guarantee. To plead a breach of an express warranty "'one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury.'" *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1092 (N.D. Cal. 2017) (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)). Plaintiffs here do not allege any "exact warranty terms" at all.

The first element requires the plaintiff to "identify a specific and unequivocal written statement about the product that constitutes an explicit guarantee." *Id.* (citing *Arroyo v. TP-Link USA Corp.*, 2015 WL 5698752, at *10 (N.D. Cal. Sept. 29, 2015) (alterations and quotation marks omitted). Here, Plaintiffs do not identify a "specific and unequivocal statement." Rather, Plaintiffs allege Goli warrants the Product "has the same benefits as a full shot of Apple Cider Vinegar" and has "sufficient amounts of ACV to provide benefits," without reference to a specific statement to that effect. *See* FAC, ¶ 98. Plaintiffs' claim thus does not satisfy Rules 8 *or* 9(b) and must be dismissed. *See Martin v. Medtronic, Inc.*, 2017 WL 825410, at *13 (E.D. Cal. Feb. 24, 2017) (express warranty cause of action that did "not allege the contents of any alleged warranties" dismissed for failure to satisfy federal pleading standards).

Paragraphs 12, 13, and 24 allege the Product's labeling says it produces "'the same age-old benefits of traditional Apple Cider Vinegar without the unpleasant taste," and that the "website echoes this claim with 'All of the Age Old Benefits of Traditional ACV.'" However, those allegations are different than the purported warranty Plaintiffs frame in paragraph 98. Indeed, paragraphs 12, 13, and 24 reference neither a consumption amount (*i.e.*, "full shot") nor that the Product has "sufficient amounts" of ACV. Thus, under the federal pleading standards, Plaintiffs are not entitled to an assumption that the statements in paragraphs 12, 13, and 24 are the "specific and unequivocal written statements" about the Product that "constitute an explicit guarantee." Plaintiffs'

express warranty claim thus must be dismissed.[10]

## XII.    CONCLUSION

Goli respectfully requests Plaintiffs' Complaint be dismissed in its entirety. Plaintiffs cannot establish a plausible claim for relief without omitting key facts and misrepresenting the nature and substance of the Product's label and the substantial amount of data and other information Goli offers consumers about the Product. Accordingly, because Plaintiffs cannot cure the Complaint's deficiencies without grounding any such cure on misleading allegations and representations, leave to amend should not be granted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir 2000) (en banc) (leave to amend should not be granted if deficiencies cannot by cured by amendment).

DATED:  October 9, 2020                                     **DLA PIPER LLP (US)**

By:  */s/ Christopher M. Young*
CHRISTOPHER M. YOUNG
Attorneys for Defendant GOLI NUTRITION INC.

---

[10] If paragraphs 12, 13, and 24 contain the benefits statement referenced in paragraph 98, this is not an express warranty because it is not "an affirmation of fact or a promise or description of the goods." *Coffelt v. Kroger Co.*, 2017 WL 10543343, at *6 (C.D. Cal. Jan. 27, 2017) (citations omitted). The fact that a statement lacks specifics is an indication that it is not an affirmation of fact. *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (1985). Paragraphs 12, 13, and 24 do not specify any benefits. Further, Plaintiffs' breach statement is insufficient because it does not identify any particular benefit the Product does not offer. *Id.*, ¶ 101 ("the Products do not have the characteristics, uses, or *benefits* as promised") (emphasis added). For these reasons, Plaintiffs' express warranty claim must be dismissed even if the benefits referenced in paragraph 98 are charitably assumed to be the benefits referenced in paragraphs 12, 13, and 24. *See also Hadley*, 273 F. Supp. 3d at 1093 (finding that because none of the products at issue "contain[ed] actionably misleading statement[s], the statements on those products cannot create an express warranty").

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS FAC